BROWN, d/b/a MISSISSIPPI TERMITE CONTROL CO. *v.* BATTLE.

April 5, 1954

No. 39190          59 Adv. S. 4          71 So. 2d 790

*Will S. Wells,* Jackson; *Roy Noble Lee,* Forest, for appellant.

*Barnett, Jones & Montgomery,* Jackson, for appellee.

Hall, J. ·

In 1949 appellee discovered that his home was infested with termites and requested appellant to inspect the property with the view of entering into· a contract for eradication of the termites. The inspection was made on December 2, 1949, when the property was found to be heavily infested. On December 5, 1949, the parties entered into a written contract by the terms of which appellant agreed "to eradicate termites from the structure" by the application of its chemicals and warranted that any additional application to insulate against attack of subterranean termites would be performed at no additional cost. The contract was effective for a period of one year from its date for a consideration of $125.00 which was paid and was renewable for a consideration of $10.00 per year for each additional year. It is undisputed that it was renewed for one additional year by the payment of this $10.00 consideration. By the terms of the contract appellant agreed to inspect the structure approximately every six months while it was in effect. Appellee brought suit in the county court against appellant for the recovery of damages to his home by termites as a result of a breach of the contract and recovered

judgment in the amount of $1,498.34, which was affirmed by the circuit court on appeal, and from that result the original defendant appeals here.

▉▉▉ Appellant contends that he was entitled to a peremptory instruction because the contract fixed no time limit for eradication of the termites and because, as he contends, the evidence shows a substantial compliance with the contract. It is true that the contract does not specify a time limit within which the termites would be eradicated, but it does specify that it is for the primary term of one year and we think that a reasonable interpretation would be that at least they were to be eradicated within that period. It was renewable at the option of appellant for an additional term of one year, and certainly it is reasonable to assume that the parties contemplated eradication within that additional period.

▉▉▉ Reliance is placed by appellant upon what was said in the case of State, ex rel. Corley v. Hines, 203 Miss. 60, 33 So. 2d 317. That case dealt with an effort by the State Plant Board to compel licensed termite operators to insert in their contracts a provision whereby they would agree ''to eradicate termites from the foundations and superstructure of the aforesaid buildings,'' and the court held that it was unreasonable to compel such ''an absolute undertaking in any professional service such as this.'' That case was decided January 12, 1948. Almost two years later the appellant here voluntarily entered into a written contract with appellee wherein he assumed the obligation to absolutely eradicate termites from appellee's residence,—an agreement which we had said he could not be compelled to assume. Having made the agreement, we think appellant is bound by it.

▉▉▉ The evidence as to inspections made by appellant and the damage resulting from the failure to eradicate termites from the building was in sharp conflict. For appellee the proof was that the first inspection was made in September 1950, the second in February 1951, and the

third in June 1951, that termites were found on each of these occasions, and that the house was treated again in September 1950 and February 1951. It was not treated in June 1951 because, according to appellee's proof, the damage was so great that he requested appellant not to treat the property further until he could have repairs made to replace the parts of the structure which had been practically destroyed. Appellee had an inspector for the State Plant Board make an inspection in June 1951 and that inspector testified that he found a heavy infestation of termites with considerable damage to the house. It was his opinion that the treatment which had been given to the property was unsatisfactory. He gave no opinion as to when the damage occurred, saying that it could have been after December 1949 and that a great deal of it could have occurred prior to that date. Other evidence for appellee was to the effect that the damage occurred after December 1949. The evidence for appellee was to the effect that termites had eaten up through the mantle over a fireplace in the living room and had even gotten into the frame of a picture which was sitting on the mantle; that the subfloor in the living room was eaten away and had to be replaced; that some of the sills and floor joists were so badly damaged that replacement was necessary; that the house was ceiled with a fibre-board on which plaster had been applied; that in 1951, when the repairs were made, termites were working in this fibre-board and it was so badly damaged that it had to be torn out and replaced, and also that some of the studding in the walls had been eaten away and had to be replaced. Appellee testified that he requested appellant to repair the damage and that appellant refused to do so, and that thereupon appellee employed a contractor to do the work. We think that under all the evidence the case was properly submitted to the jury and that the verdict is amply supported by the evidence, for which last stated reason there was no error in overruling the

motion for a new trial on the ground that the verdict is contrary to the great weight of the evidence.

Appellant also contends that two of the instructions granted to plaintiff are erroneous. Without setting them out in full we will state that we have carefully examined them and we think they conform to the contract and the proof, and that, taking the instructions for both parties as a whole, the jury was correctly charged as to the applicable law.

It is contended, finally, that the verdict is excessive. The contractor who made the repairs testified that the actual cost thereof to appellee was $1,771.68, and that all of this was for repairs to parts of the house which had been damaged by the termites and did not include the cost of other repairs and additions which he made; he also testified that there was considerable other damage from the termites that he did not repair and he gave an estimate on the cost of those items, all of which ran the total damage up to considerably over $2,000.00. The verdict was for $1,498.34 and we think that a recovery for this amount is well supported by the proof. Consequently the judgment will be affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Ethridge* and *Gillespie, JJ.,* concur.